## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 15 |
| | ) | |
| INTERACCIONES BANKING | ) | Case No. 12-_____ (___) |
| CORPORATION, LTD., | ) | |
| | ) | |
| Debtor in a Foreign Proceeding | ) | |

## VERIFIED PETITION FOR RECOGNITION OF A FOREIGN MAIN PROCEEDING, OR, IN THE ALTERNATIVE, FOREIGN NON-MAIN PROCEEDING, AND CHAPTER 15 RELIEF PURSUANT TO SECTIONS 1504, 1515, 1517, 1520 AND 1521 OF THE BANKRUPTCY CODE

Mr. Charles Walwyn and Mr. Robert Wilkinson of PricewaterhouseCoopers, in their capacity as joint liquidators (the "Liquidators") and as foreign representatives (the "Foreign Representatives") of Interacciones Banking Corporation, Ltd. (the "Debtor" or "IBC") in a foreign proceeding pending before the Eastern Caribbean Supreme Court in the High Court of Justice of Antigua and Barbuda (the "Antigua Court") where the Debtor is liquidated (the "Antigua Proceeding"), respectfully submit this petition (the "Petition") pursuant to Sections 1504, 1515, 1517, 1520 and 1521 of Title 11 of the United States Code (the "Bankruptcy Code") seeking entry of an order, substantially in the form attached hereto as Exhibit A or, in the alternative, Exhibit B (the "Recognition Order") granting recognition of the Antigua Proceeding as a foreign main proceeding pursuant to Sections 1515, 1517, 1520 and 1521 of the Bankruptcy Code, or, in the alternative, as a foreign non-main proceeding pursuant to Sections 1515, 1517 and 1521 of the Bankruptcy Code and granting such other and further relief as the United States Bankruptcy Court for the Southern District of Texas (the "Court") deems just and proper. In support of this Petition, the Foreign Representatives rely upon the *Declaration of Charles*

*Walwyn in Support of Chapter 15 Petition for Recognition of Foreign Main Proceeding, or, in the Alternative, Foreign Non-main Proceeding* (the "Walwyn Declaration") and the *Declaration of Charles Weir in Support of Chapter 15 Petition for Recognition of Foreign Main Proceeding, or, in the Alternative, as a Foreign Non-main Proceeding* (the "Weir Declaration") filed contemporaneously herewith and incorporated herein by reference, and respectfully state as follows:

### Jurisdiction

1.      The Court has jurisdiction to consider this Petition pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).

2.      This case was properly commenced pursuant to 11 U.S.C. § 1504 by the filing of a petition for recognition of the Antigua Proceeding under 11 U.S.C. § 1515.

3.      Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1410.

4.      The statutory bases for the relief requested herein are Sections 1504, 1515, 1517, 1520 and 1521 of the Bankruptcy Code.

### Background

**I.      The Appointment of the Joint Liquidators**

5.      IBC is a banking corporation organized under the laws of Antigua and Barbuda with its principal place of business in Antigua.

6.      On June 6, 2011, Charles Walwyn and Robert Wilkinson of PricewaterhouseCoopers were appointed Receiver-Managers of the Debtor (together, in such capacity, the "Receiver-Managers"), by the Financial Services Regulatory Commission (the "FRSC"), a statutory body established under the International Business Corporations Act (the "Act"), Cap. 222 of the Laws of Antigua and Barbuda, and charged, pursuant to Section 287 of

the Act, with the responsibility of presenting to the FRSC, within thirty (30) days, a proposal for reorganization or dissolution of IBC, an Antiguan bank with headquarters in Antigua.

7.     On July 6, 2011, the Receiver-Managers submitted a written report to the FRSC (the "Report"), where the Receiver-Managers concluded that IBC was insolvent and unable to pay its creditors, with a deficit of approximately $18.8 million as of June 30, 2011.  First, the Report indicated that IBC's total assets amounted to approximately $8.45 million, of which the Receiver-Managers were able to take custody and control of approximately $3.5 million.  The Report identified the remaining, uncollected assets as tied up in a combination of litigation in the United States (further described below) and claims of the Venezuelan authorities against IBC and a related Venezuelan entity.[1]  Of these remaining assets, the Receiver-Managers noted that IBC had deposited $7.3 million of bonds, equities, and other assets with Global Financial Services, L.L.C. ("Global").  Second, the Report indicated that IBC's liabilities to creditors amounted to approximately $27.25 million.  These liabilities included approximately $14.6 million in client deposits and another $10.65 million of custodial funds.  The Receiver-Managers have estimated that there are approximately 300 active creditors of IBC, of which approximately 100 were customers with deposit balances and custody funds.  Accordingly, the Receiver-Managers' Report recommended that IBC be placed into formal liquidation.[2]

8.     On October 7, 2011, the FRSC filed a petition with the Antigua Court seeking to wind up IBC and appoint the Receiver-Managers to liquidate and dissolve IBC pursuant to Section 288(2)(d) of the Act.

---

[1]     Upon information and belief, the only activity currently in Venezuela relates to Interacciones Casa del Bolsa, C.A., a related entity to IBC, which is incorporated in Venezuela, for which the Venezuelan authorities have appointed an Administrator.

[2]     A second and final written report was submitted by the Liquidators to the FRSC on May 2, 2012 (the "Final Report").

9.     On March 16, 2012, the FRSC's petition was granted by the Antigua Court and the Receiver-Managers were appointed as Liquidators pursuant to Section 304 of the Act.

**II.    The Parties in Interest and Their Contractual Relationship**

10.     Global is a United States limited liability company, with its principal place of business in Harris County, Texas.

11.     Global provided brokerage services to IBC for several years.   Global is an introducing broker to its clearing firm, JP Morgan Clearing Corp., as successor to Bear Sterns ("JP Morgan").   IBC had an investment portfolio with Global consisting of two accounts. Specifically, IBC and JP Morgan entered into: (i) a Customer Agreement For Introduced Accounts, dated August 16, 2007 (the "Customer Agreement"), and (ii) an Options Information Form and Agreement dated November 16, 2010 (the "Options Agreement").   In furtherance of such agreements, Global had custody of certain bonds, equities and other assets of IBC (the "Securities").   Pursuant to the Customer Agreement, IBC was able to transact purchases and sales and borrow several million dollars on margin, using the assets in IBC's accounts as collateral for such loans.

12.     Pursuant to the Customer Agreement, IBC transferred the Securities to its accounts at Global and, as of December 31, 2010, had an outstanding loan of approximately $4,000,000 on margin, using the Securities in IBC's accounts as collateral for such loan (the "Margin Loan").

13.     Donzi, N.V. ("Donzi") is a limited liability company, registered and located in the island of Curacao, Dutch West Indies.

14.     IBC and Donzi are parties to a certain Custodial Services Agreement dated March 31, 2009 (the "Custodial Services Agreement"), pursuant to which Donzi appointed IBC as

custodian of certain securities (the "Disputed Securities").  (Custodial Services Agreement ¶ 1.)

Importantly, the Custodial Services Agreement provides that it "shall be construed in accordance

with and governed by the laws of Antigua & Barbuda."  (Custodial Services Agreement ¶ 18.)

Further, paragraph 6(b) of the Custodial Services Agreement provides as follows:

> The customer [*i.e.*, Donzi] acknowledges that the Bank [*i.e.*, IBC] will deposit the property of the Customer with a foreign Custodian or Foreign Securities Depository in an account which holds the assets of the Bank.

> The Bank will separately account for and identify the Property as belonging to the customer in the Bank's internal records; however, the Customer understands and agrees that the Foreign Property will not be so identified by Foreign Custodian, but rather the Foreign Property will be identified by the Foreign Custodian as being held for the account of the Bank.  (Custodial Services Agreement ¶ 6(b).)

15.    Over the course of their relationship, Donzi effected the transfer of approximately

$5.1 million of its bonds and equities into the custody of IBC.

16.    Donzi alleges that the Disputed Securities were among the bonds and equities

which IBC transferred to its accounts at Global to borrow under the Margin Loan and pledged as

collateral for the Margin Loan.

**III.    Events Leading to the Commencement of the Chapter 15 Case**

17.    On February 24, 2011, Donzi filed an Original Petition (the "Original

Complaint") against Global in the District Court of Harris County, Texas, the 113th Judicial

District, commencing the civil action entitled *Donzi, N.V. v. Global Financial Services, L.L.C.*,

Case No. 2011-11903 (the "State Court Action").  Donzi's Original Complaint alleged claims for

breach of fiduciary duty and for declaratory relief in connection with approximately $5.1 million

in bonds and equities that Donzi alleged were deposited with IBC and were currently held in

custody at Global.  (Original Complaint ¶¶ 14-15.)  Donzi's Original Complaint also sought a

temporary restraining order and a temporary injunction prohibiting Global from disposing of or

transferring the bonds, equities, and other assets in IBC's accounts with Global.   (Original Complaint ¶¶ 23-24.)

18.     On March 1, 2011, the District Court for Harris County, Texas, granted Donzi's request for a temporary restraining order prohibiting Global from disposing of, transferring, or liquidating the assets in IBC's accounts with Global.  (Mar. 1, 2011 Order.)

19.     On May 27, 2011, Global filed a Third-Party Petition against IBC alleging, among other things, that Global was entitled to indemnification from IBC for any claims brought against Global by Donzi.

20.     On October 11, 2011, the Receiver-Managers informed Global that they accepted service of the summons and Third-Party Petition.  On October 12, 2011, the Receiver-Managers filed a Notice of Removal of the State Court Action, which removed the action to the United States District Court for the Southern District of Texas (the "Federal District Court") now styled *Donzi, N.V. v. Global Financial Services, L.L.C.*, No. 11 Civ. 3642 (the "Federal District Court Action").

21.     On October 13, 2011, the Receiver-Managers filed an *Ex Parte* Application for a Temporary Restraining Order seeking to enjoin Global from disposing, transferring, or otherwise liquidating approximately $7.3 million in bonds, equities, and other assets in IBC's accounts. (Dkt. No. 3.)  On October 14, 2011, the Court granted the Receiver-Managers' request for a Temporary Restraining Order.  (Dkt. No. 4.)

22.     On October 21, 2011, the Receiver-Managers filed a Motion for Preliminary Injunction (the "Receiver-Managers Preliminary Injunction Motion") seeking to enjoin Global from disposing, transferring, or otherwise liquidating approximately $7.3 million in bonds, equities, and other assets in IBC's accounts which were in Global's custody.  (Dkt. Nos. 7-8.)

The Receiver-Managers Preliminary Injunction Motion explained that the Receiver-Managers intended to file a Chapter 15 case such that the IBC liquidation proceeding in Antigua would be recognized as a "foreign main proceeding" under Chapter 15 of the Bankruptcy Code, and that such recognition would stay the Federal District Court Action and subject the Securities, including the Disputed Securities, to the Antiguan Proceeding.

23.     On October 24, 2011, Donzi filed its own Motion for Preliminary Injunction (the "Donzi Preliminary Injunction Motion") directing Global to deposit into the registry of the Court any securities belonging to Donzi which it was holding in custody and the cash value of securities "originally belonging to Donzi which had matured or been liquidated" since the above-described dispute arose.  (Dkt. No. 10.)

24.     On November 28, 2011, the Federal District Court entered an order denying (i) the Receiver-Managers Preliminary Injunction Motion, and (ii) the Donzi Preliminary Injunction Motion (the "Order Denying the Preliminary Injunction Motions") (Dkt. No. 32) because, among other things, the Receiver-Managers had not yet filed a petition for recognition for IBC under Chapter 15 of the Bankruptcy Code.

25.     Following the entry of the Order Denying the Preliminary Injunction Motions, Global liquidated a portion of the Securities in IBC's accounts to repay the Margin Loan.  Upon information and belief, the Margin Loan has now been repaid in its entirety.  However, Global still holds a portion of the Securities in IBC's accounts in the amount of approximately $4,606,934.

26.     On February 20, 2012, Donzi filed its First Amended Complaint (the "Amended Complaint"), pursuant to which it added IBC as a defendant and alleged claims against IBC

under theories of, among other things, fraud, breach of fiduciary duty, fraud by nondisclosure and civil conspiracy.

27.     On March 5, 2012, IBC filed its Response to the Amended Complaint.   The parties to the litigation are now in discovery.

**IV.     The Chapter 15 Cases**

28.     Shortly after the Antigua Court's entry of its Order dated March 16, 2012 (the "March 16 Order") appointing the Liquidators,[3] the Foreign Representatives filed a petition under Chapter 15 (the "Chapter 15 Petition") seeking recognition of the Antigua Proceeding as a "foreign main proceeding," or, in the alternative, as a "foreign non-main proceeding," under Sections 1515 and 1517 of the Bankruptcy Code.  Specifically, the Foreign Representatives need the Court to grant a stay of all proceedings against the Debtor and its assets, including any of the Debtor's assets located in the United States.  The Foreign Representatives request this relief to facilitate IBC's cross-border liquidation by protecting the Debtor from the commencement or continuation of actions in the United States, whether against its United States assets or otherwise.

29.     Congress enacted Chapter 15 to ensure that a United States bankruptcy court can recognize and enforce actions and orders of a foreign court in a restructuring or liquidation proceeding undertaken in a jurisdiction where the debtor has its "center of main interest" or an "establishment."  Chapter 15 provides for both the granting of relief during the pendency of the foreign proceeding, such as the application of Section 362 of the Bankruptcy Code to United States assets, and recognition and enforcement in the United States of any orders entered in the foreign proceeding.

---

[3]     Donzi's counsel, who was present during the hearing leading to the appointment of the Liquidators, did not object to the relief requested.

30.     Here, although the Debtor's assets are primarily located in Antigua, the Debtor (i) owns assets in the United States, and (ii) is sued by a potential creditor or other interested party in the United States.  Accordingly, absent the granting of relief under Section 1520 or 1521 of the Bankruptcy Code, creditors of the Debtor may seek a tactical advantage through unilateral action, including acceleration of efforts to commence or continue litigation, attachment or other legal process in whatever United States jurisdiction they choose.  In particular, creditors may seek to exercise control over the Securities in the Debtor's accounts with Global.  In addition, creditors may seek through litigation in the United States to avoid participation in the Antigua Proceeding, the success of which depends on the ability to adopt a unified plan covering the claims of all creditors.

31.     Any attempt to exercise control, transfer, distribute, or otherwise liquidate IBC's assets in the United States will significantly decrease the assets available to the Liquidators as they attempt to fairly resolve claims brought by all of IBC's creditors.  These assets cannot be disposed of by one creditor for the sole benefit of that individual creditor.  Rather, any sale of these assets and distribution of the resulting funds should be done in accordance with Chapter 15 of the Bankruptcy Code by the Liquidators whose duty is to oversee a distribution of assets that will benefit all of IBC's creditors, not just a few.  Absent entry of a recognition order, the Liquidators' ability to ensure a fair distribution for all creditors will be significantly harmed, and the stated purposes of Chapter 15 will be frustrated.  See 11 U.S.C. § 1501(a)(4) (identifying one of the statutory objectives of Chapter 15 as the "protection and maximization of the value of the debtor's assets").  In addition, absent the recognition of the Antigua Proceeding, the Liquidators will continue to incur significant legal costs to defend the action brought by Donzi against IBC,

further depleting IBC's scarce resources, which resources must be preserved for the benefit of all IBC's creditors.

### Basis for Relief

32.     The Debtor's Chapter 15 Petition meets the standard for recognition under the Bankruptcy Code.  There is no question that (a) the Liquidators are "foreign representatives" as that term is used in Section 1517 of the Bankruptcy Code, (b) the Debtor is a banking corporation organized under the laws of Antigua and Barbuda whose center of main interests lies in Antigua, (c) the Antigua Proceeding is a "foreign main proceeding," or, in the alternative, a "foreign non-main proceeding," and (d) the Chapter 15 Petition otherwise meets the objective criteria for recognition.  In fact, this Chapter 15 Case exemplifies precisely the type of relief Congress wanted to make available: the ability to effectively reorganize (or liquidate) across international borders to maximize the value of the assets for the benefit of stakeholders in multiple jurisdictions.

33.     Chapter 15 of the Bankruptcy Code states that unless manifestly contrary to the public policy of the United States, a court shall enter an order recognizing a foreign proceeding if:

> (1) such foreign proceeding for which recognition is sought is a foreign main proceeding or foreign nonmain proceeding within the meaning of section 1502;
>
> (2) the foreign representative applying for recognition is a person or body; and
>
> (3) the petition meets the requirements of section 1515.

11 U.S.C. § 1517(a).

34.     Chapter 15 of the Bankruptcy Code provides a simple, objective standard for recognition of a foreign insolvency proceeding.  A court's decision whether to grant recognition

- 10 -

does not depend on any findings about the nature of the foreign proceeding itself. All that the Bankruptcy Code requires is compliance with the statutory elements. See H.R. Rep. 109-31(1), 109th Cong., Sess. 2005, reprinted in 2005 U.S.C.C.A.N. 88, 169 at 175 ("the decision to grant recognition is not dependent upon any findings about the nature of the foreign proceedings of the sort previously mandated by section 304 of the Bankruptcy Code. The requirements of this section, which incorporates the definitions in section 1502 and sections 101(23) and 101(24), are all that must be fulfilled to attain recognition.").

**I.      The Antigua Proceeding is a "Foreign Proceeding"**

35.      The Bankruptcy Code defines a "foreign proceeding" as "a collective judicial or administrative proceeding in a foreign country, including an interim proceeding, under a law relating to insolvency or adjustment of debt in which proceeding the assets and affairs of the debtor are subject to control or supervision by a foreign court, for the purpose of reorganization or liquidation." 11 U.S.C. § 101(23). The Antigua Proceeding represents a statutory means of comprehensively liquidating the Debtor's assets under the supervision of the Antigua Court. The Antigua Proceeding is a "foreign proceeding" as it constitutes a collective judicial proceeding under the laws of Antigua and Barbuda, which laws relate to insolvency, in which the assets of the Debtor are subject to control or supervision by the Antigua Court for the purpose of liquidating such assets. Accordingly, the Chapter 15 Case involves a "foreign proceeding" within the meaning of Section 101(23) of the Bankruptcy Code.

**II.      The Liquidators are "Foreign Representatives"**

36.      The Bankruptcy Code defines a "foreign representative," in pertinent part, as a "person or body . . . authorized in a foreign proceeding to administer the reorganization or the liquidation of the debtor's assets or affairs or to act as a representative of such foreign proceeding." 11 U.S.C. § 101(24). The Foreign Representatives satisfy the requirements of

Section 101(24) of the Bankruptcy Code because, pursuant to March 16 Order, the Antigua Court appointed the Liquidators to administer the liquidation of the Debtor's assets.

**III.     The Chapter 15 Case Was Properly Commenced**

37.     The Foreign Representatives duly and properly initiated the Chapter 15 Case. Section 1504 of the Bankruptcy Code provides that the filing of a petition for recognition of a foreign proceeding commences a Chapter 15 case.   11 U.S.C. § 1504.   The Foreign Representatives filed the Chapter 15 Petition and proper supporting documents, thereby commencing the Chapter 15 Case.

38.     Section 1515 of the Bankruptcy Code sets forth the process by which a foreign representative applies for recognition.  It provides, in relevant part, that:

> (a)   A foreign representative applies to the court for recognition of a foreign proceeding in which the foreign representative has been appointed by filing a petition for recognition.
>
> (b)  A petition for recognition shall be accompanied by –
>
> > (1)   a certified copy of the decision commencing such foreign proceeding and appointing the foreign representative . . .

11 U.S.C. § 1515.

39.     As set forth above, the Antigua Court authorized the Foreign Representatives to liquidate and dissolve the Debtor in the Antigua Proceeding.  In addition, along with the Chapter 15 Petition, the Foreign Representatives submitted a true and exact copy of the March 16 Order evidencing their appointment, and the commencement of the judicial phase of the Antigua Proceeding.

40.     The Foreign Representatives also submitted to the Court a statement identifying all foreign proceedings with respect to the Debtor that are known to the Foreign Representatives,

as required by Section 1515(c) of the Bankruptcy Code.[4]  Additionally, the materials submitted by the Foreign Representatives otherwise comply with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and the Local Rules of the United States Bankruptcy Court for the Southern District of Texas (the "Local Bankruptcy Rules"). Accordingly, the Chapter 15 Petition satisfies the requirements of Section 1515(b) of the Bankruptcy Code.

**IV.   The Antigua Proceeding is a "Foreign Main Proceeding"**

41.    The Court should recognize the Antigua Proceeding as a "foreign main proceeding," as defined in Section 1502(4) of the Bankruptcy Code.  A foreign proceeding is a "foreign main proceeding" if it is pending in the country where the debtor has the "center of its main interests." 11 U.S.C. §§ 1502(4), 1517(b)(1).

42.    While the Bankruptcy Code does not define the term "center of main interests," it does provide that, in the absence of evidence to the contrary, the debtor's registered offices are presumed to be the debtor's center of main interests.  11 U.S.C. § 1516(c).  However, such presumption "is included for speed and convenience of proof where there is no serious controversy."  See H.R. Rep. No. 31, 109th Cong., 1st Sess. 1516 (2005).  "This presumption 'permits and encourages fast action in cases where speed may be essential, while leaving the debtor's true 'center' open to dispute in cases where the facts are more doubtful.'"  In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd (In Provisional Liquidation), 374 B.R. 122, 128 (Bankr. S.D.N.Y. 2007) (citing Jay Lawrence Westbrook, Locating the Eye of the Financial Storm, 32 BROOK. J. INT'L L. 3, 15 (2007)).

---

[4]    This statement is embodied in the Walwyn Declaration for purposes of Section 1515(c) of the Bankruptcy Code.

43.     Although "[t]he Bankruptcy Code does not state the type of evidence required to rebut the presumption that the COMI is the debtor's place of registration or incorporation," courts have found that "[v]arious factors, singly or combined, could be relevant to such a determination," including: (a) the location of the debtor's headquarters; (b) the location of those who actually manage the debtor; (c) the location of the debtor's primary assets; (d) the location of the majority of the debtor's creditors or of a majority of the creditors who would be affected by the case; and (e) the jurisdiction whose laws would apply to most disputes.  In re SPhinX, Ltd., 351 B.R 103, 117 (Bankr. S.D.N.Y. 2006), aff'd, 371 B.R. 10 (S.D.N.Y. 2007); see also In re Basis Yield Alpha Fund (Master), 381 B.R. 37, 47 (Bankr. S.D.N.Y. 2008); Bear Stearns, 374 B.R. at 128.

44.     Based on the foregoing, Antigua is the Debtor's center of main interests because, among other things: (i) the Debtor is registered in Antigua and has the following address in Antigua: Suite 19, Jasmine Court, Friars Hill Road, St John's, Antigua; (ii) the Debtor's principal assets are located in Antigua where the Liquidators maintain IBC's liquid assets in the amount of approximately $3.5 million in an account in Antigua; (iii) the Liquidators (who are now in control of the Debtor) are located in Antigua and have been managing the Debtor's affairs for more than eleven (11) months; and (iv) the liquidation proceedings and most disputes related thereto will in all likelihood be subject to Antiguan law.  Further, as described in the Report, (i) IBC has no management (Report, p. 2); (ii) the Senior Compliance Officer is the sole remaining employee of IBC and is assisting the Liquidators since the day of their appointment as Receiver-Managers (Report, p. 6); (iii) the Liquidators have taken possession of IBC's premises (Report, p. 2), (iv) the Liquidators have IBC's books, records and computer systems in Antigua under their control (Report, p. 2); and (v) the Liquidators have established bank accounts for IBC under

- 14 -

the name of the Liquidators (Report, p. 3).  Accordingly, the Antigua Proceeding is pending in the center of the Debtor's main interests and constitutes a "foreign main proceeding" under Section 1502(4) of the Bankruptcy Code.

45.     In addition, as further described in the Report, based on the most recent available listing of IBC's customers, the Liquidators (i) notified the creditors of their appointment and duties as Receiver-Managers, (ii) distributed a general letter to creditors in both English and Spanish requesting confirmation of the creditors' balance at IBC and the creditors' current contact information, and (iii) received responses from approximately 60% of the creditors generally confirming balances as of December 31, 2010 (Report, pp. 4-5; Final Report, p. 4).  Accordingly, the expectations of third parties affected by this case are that IBC's center of main interests is in Antigua.

46.     Courts have recognized that where a debtor's activities have been conducted only in connection with winding up its business for an extended period of time, the activities of a debtor's liquidators are important to the "center of main interests" determination.  In re British Am. Ins. Co., Ltd., 425 B.R. 884, 914 (Bankr. S.D. Fla. 2010) ("There may be instances where a foreign representative remains in place for an extended period, and relocates all of the primary business activities of the debtor to his location (or brings business to a halt), thereby causing creditors and other parties to look to the judicial manager as the location of the debtor's business. This could lead to the conclusion that the center of its main interest has become lodged with the foreign representative"); In re Fairfield Sentry Ltd., 440 B.R. 60, 64-65 (Bankr. S.D.N.Y. 2010) aff'd, 2011 U.S. Dist. LEXIS 105770 (S.D.N.Y. 2011) (recognizing liquidation proceedings in the British Virgin Islands ("BVI") as "foreign main proceeding" when the BVI liquidators were appointed eleven (11) months prior to the Chapter 15 petition and conducted all the debtor's

business since that time); <u>In re British Am. Isle of Venice (BVI), Ltd.</u>, 441 B.R. 713, 722 (Bankr. S.D. Fla. 2010) (holding that a debtor's liquidation proceeding in the BVI was a "foreign main proceeding" under Chapter 15 of the Bankruptcy Code); <u>In re Betcorp Ltd.</u>, 400 B.R. 266, 292-93 (Bankr. D. Nev. 2009) (holding that a debtor's center of main interests was in the place where the liquidation was pending).

47.     <u>Fairfield Sentry</u> is particularly instructive because it is similar to the case at bar. The case involved a liquidator-petitioner seeking recognition of liquidation proceedings filed in the BVI.  Although certain objectors argued that New York was the debtors' center of main interests, the bankruptcy court granted the liquidators' petition and ruled that the BVI was the debtors' center of main interests.  In reaching this conclusion, the bankruptcy court found the following factors significant: (i) the debtors had effectively ceased doing business more than eighteen (18) months before the liquidators filed their bankruptcy petition and seven (7) months before the BVI liquidation proceedings commenced; (ii) the debtors had no place of business, no management, and no tangible assets located in the United States; (iii) the debtors' "activities for an extended period of time ha[d] been conducted only in connection with winding up the [d]ebtors' business"; (iv) since the commencement of the debtors' liquidation proceedings in the BVI, the BVI-based liquidators had been directing and coordinating the debtors' affairs; and (v) the BVI-based liquidators had BVI-resident employees and offices, and undertook to transfer significant books and records to office space leased by the debtors in the BVI.  See <u>Fairfield Sentry</u>, 440 B.R. at 64-65.

48.     <u>British Am. Isle of Venice (BVI)</u> is also instructive.  <u>British Am. Isle of Venice (BVI)</u> involved a debtor in liquidation proceedings in the BVI, under the control of a liquidator and supervised by a BVI court for approximately fourteen (14) months.  441 B.R. at 723.  At the

time of the liquidator's provisional appointment, the debtor had no officers or directors.  Id. at 720-21.  For more than one year, the liquidator had been the debtor's only manager and the only person authorized to act on its behalf.  From the time of his appointment by the BVI court, the liquidator had been solely responsible for the day-to-day management of the debtor and had done this consistently from his offices in the BVI.  Id. at 721.  Based on the foregoing, the bankruptcy court ruled that the debtor's center of main interests was the BVI.  Id. at 723.  Here, as in Fairfield Sentry and British Am. Isle of Venice (BVI), the Liquidators, who are located in Antigua, have been managing the Debtor's affairs for more than eleven (11) months and the center of main interests of IBC has "become lodged with the foreign representative."

49.     Finally, the Betcorp case is also relevant.  In Betcorp, an Australian liquidator in a voluntary winding up petitioned a bankruptcy court for recognition of the proceeding as a "foreign main proceeding" under Chapter 15 of the Bankruptcy Code.  400 B.R. at 271.  A United States company in litigation with Betcorp objected to the petition on numerous grounds, including that Australia was not Betcorp's center of main interests.  Id. at 285.  The objector argued that the facts that Betcorp's creditors were in the United States and the United Kingdom, and that Betcorp's operational history was in the United States, required that the court hold that Betcorp's center of main interests was not in Australia.  Id. at 290-92.  Upon examining factors including that (1) the location of Betcorp's registered office and the place from where the winding up was being administered was Australia, (2) the location of those managing Betcorp, i.e., the liquidators (since the commencement of the winding up divested the directors of their authority) were located in Australia; and (3) Betcorp had no employees except for those selected by the liquidators, the court held that Betcorp's center of main interests was Australia.  Id. at 292.

50.     Courts in this and other circuits have also held that the relevant time for determining a debtor's center of main interests is at the time the petition for recognition is filed. See Lavie v. Ran (In re Ran), 607 F.3d 1017 (5th Cir. 2010) (holding that a debtor who relocated from Israel nearly ten (10) years prior to the filing of a Chapter 15 petition by an Israeli bankruptcy receiver, maintained his finances and business exclusively in the United States, had established employment and a residence in Texas, was a permanent legal resident of the United States, and had neither a secondary residence nor a place of employment in Israel, did not have either a place of operations in Israel nor conducted nontransitory economic activity in Israel).

51.     Specifically, in Ran, the United States Court of Appeals for the Fifth Circuit refused to look back at the debtor's operational history and held that the center of main interests was appropriately determined at the time of the filing of the petition for recognition. Id. at 1025. The court examined the text of Section 1502 of the Bankruptcy Code and noted that every operative verb is written in the present or present progressive tense, and "[m]ore specifically, Section 1502 defines foreign main proceeding as a 'foreign proceeding pending in the country where the debtor *has* the center of its main interests.'" Id. (emphasis in original) (citing 11 U.S.C. §1502(4)).  The Ran court then held that "Congress's choice to use the present tense requires courts to view the COMI determination in the present, *i.e.* at the time the petition for recognition was filed."  Id.  Further, the court cautioned that "[i]f [courts] were to assess COMI by focusing upon [a debtor's] operational history, there would be an increased likelihood of conflicting COMI determinations, as courts may tend to attach greater importance to activities in their own countries, or may simply weigh the evidence differently which may lead to the possibility of competing main proceedings, thus defeating the purpose of using the COMI construct."  Id. (citing Betcorp, 400 B.R. at 290).

52.     Here, significant evidence in the record supports the determination that the center of main interests for IBC, as of the date of the filing of this Chapter 15 Case, is Antigua – namely: (1) IBC is incorporated and maintains its registered office in Antigua; (2) since the commencement of the IBC Proceeding in June 6, 2011, more than eleven (11) months ago, the Liquidators have been directing and coordinating IBC's affairs; (3) IBC maintains liquid assets of approximately $3.5 million in an account in Antigua; (4) the Liquidators have Antigua-resident employees and offices, and have recovered portions of IBC's books and records and computer systems; and (v) the Liquidators notified the creditors of their appointment and duties, distributed a general letter to creditors in both English and Spanish and received responses from approximately 60% of the creditors.  Because the Antigua Proceeding commenced in Antigua eleven (11) months prior to the Chapter 15 Petition, and for all the additional reasons described above, the expectations of third parties are that IBC's center of main interest is Antigua.

**V.      In the Alternative, the Antigua Proceeding is a "Foreign Non-Main Proceeding"**

53.     In the alternative, this Court should grant the Antigua Proceeding recognition as a "foreign non-main proceeding" as defined in Section 1502(5) of the Bankruptcy Code.  Even assuming *arguendo* that Antigua is not the center of main interests for IBC, the Antigua Proceeding constitutes at least a "foreign non-main proceeding" as defined in Section 1517(b)(2) of the Bankruptcy Code.  Under the Bankruptcy Code, a "foreign non-main proceeding" is defined as a "foreign proceeding" pending in a country where the debtor has an "establishment" within the meaning of Section 1502 of the Bankruptcy Code. 11 U.S.C. § 1517(b)(2). "Establishment" is broadly defined in the Bankruptcy Code as "any place of operations where the debtor carries out a nontransitory economic activity."  11 U.S.C. § 1502(2).  The Liquidators carry out nontransitory operational, managerial, and other economic activities in Antigua, as described in detail above.  Given the nontransitory nature of the Liquidators activities in Antigua,

IBC has an "establishment" in Antigua within the meaning of Section 1502(2) of the Bankruptcy Code.  The Antigua Proceeding may therefore be recognized as a foreign non-main proceeding pursuant to Section 1517(b)(2) of the Bankruptcy Code.

54.     If, in the alternative, the Antigua Proceeding is deemed a "foreign non-main proceeding" within the meaning of Section 1502 of the Bankruptcy Code, the Liquidators qualify as "foreign representatives" under the Bankruptcy Code, and the Petition for Recognition meets the requirement of Bankruptcy Code Section 1515. Accordingly, under Section 1517(a) of the Bankruptcy Code, the Court should enter an order granting recognition to the Antigua Proceeding as a foreign non-main proceeding.  See 11 U.S.C. § 1517 (an order recognizing a foreign proceeding "shall be entered" if all of the requirements for recognition have been met).

## VI.     Recognition of the Antigua Proceeding is Consistent With Public Policy

55.     Finally, recognizing the Antigua Proceeding would not be manifestly contrary to the public policy of the United States.  See 11 U.S.C. § 1506 (court may refuse to recognize a foreign proceeding "if the action would be *manifestly* contrary to the public policy of the United States) (emphasis added).[5]   Indeed, granting such recognition embodies United States public policy regarding foreign proceedings articulated through the objectives of Sections 1501(a) and 1508 of the Bankruptcy Code.  These sections affirm the international origin of Chapter 15 of the Bankruptcy Code and provide effective mechanisms for dealing with cross-border insolvencies, including: (i) establishing cooperation between United States courts, trustees, examiners, debtors and debtors in possession, and the courts and other competent authorities of foreign countries; (ii) creating greater legal certainty for trade and investment; (iii) establishing fair and efficient

---

[5]     As the legislative history explains, Section 1506 "has been narrowly interpreted on a consistent basis in courts around the world.  The word 'manifestly' in international usage restricts the public policy exception to the most fundamental policies of the United States."  H.R. Rep. 109-31(1), 109 Cong., 1st Sess. 2005, reprinted in 2005 U.S.C.C.A.N. 88, 172.

administration of cross-border insolvencies that protects the interests of all creditors, and other interested parties, including the debtor; (iv) protecting and maximizing the value of the foreign debtor's assets; and (v) facilitating the rescue of the foreign debtor's financially-troubled businesses (thereby protecting investments in the foreign debtor and preserving the employment of the foreign debtor's employees). 11 U.S.C. §§ 1501(a), 1508. The Court's recognition of the Antigua Proceeding and granting of the requested relief would promote the policy behind Chapter 15 of the Bankruptcy Code by providing precisely the assistance the Debtor needs here -- an effective cross-border liquidation of its business. See 11 U.S.C. § 1501(a).

56.     Moreover, the insolvency laws of Antigua and Barbuda provide stakeholders similar due process rights and comparable protections as are available under the laws of the United States and, hence, are not manifestly contrary to the public policy of the United States.

### Notice

57.     The Foreign Representatives have provided notice of the Petition, pursuant to Bankruptcy Rules 1011(b) and 2002(q), to: (a) the Office of the United States Trustee for the Southern District of Texas; (b) counsel to Donzi; (c) counsel to Global; (d) all parties to litigations currently pending in the United States to which the Debtor is a party; (e) any known creditor of the Debtor for whom the Foreign Representatives have an address; and (f) any party-in-interest that becomes known to the Foreign Representative by U.S. Mail within two (2) business days following the time any such party is identified by the Foreign Representatives. In light of the nature of the relief requested, the Foreign Representatives respectfully submit that no further notice is necessary. The Foreign Representatives believe that such notice and service is reasonable and proper under the circumstances and complied with Bankruptcy Rules 1011(b) and 2002(q).

- 21 -

**<u>No Prior Request</u>**

58.     No prior request for the relief sought herein has been made to this or any other Court.

WHEREFORE, the Foreign Representatives respectfully request that the Court grant this Petition and: (a) enter the Recognition Order in substantially the form attached hereto as Exhibit A or, in the alternative, Exhibit B; and (b) grant any such other and further relief as the Court deems just and proper.

Date:  May 9, 2012

/s/ Alison L. Smith
Alison L. Smith, Esq.
Attorney in Charge
Texas Bar No. 18529500
SDTX ID No. 816
McDermott Will & Emery LLP
1000 Louisiana Street, Suite 3900
Houston, Texas 77002-5005
Telephone: (713) 653-1700
Facsimile: (713) 739-7592

Gordon A. Greenberg, Esq.
Charles E. Weir, Esq.
McDermott Will & Emery LLP
2049 Century Park East, Suite 3800
Los Angeles, CA 90067
Telephone: (310) 277-4110
Facsimile: (310) 277-4730

Nava Hazan, Esq.
McDermott Will & Emery LLP
340 Madison Avenue
New York, NY 10173
Telephone: (212) 547-5460
Facsimile: (212) 547-544

*Counsel to Charles Walwyn and Robert Wilkinson of PricewaterhouseCoopers*
*In Their Capacity as Liquidators of Interacciones Banking Corporation, Ltd.*